UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELINE ECHOLS, individually and on
behalf of all others similarly situated,

                Plaintiff,

v.

CONGRESS COLLECTION, LLC,
and John Does 1-25

                Defendants.

_____/

Case No. 20-cv-12254

Paul D. Borman
United States District Judge

## OPINION AND ORDER GRANTING DEFENDANT CONGRESS COLLECTIONS LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) (ECF NO. 8)

Plaintiff Deline Echols has filed this putative class action against Defendant Congress Collection LLC pursuant to the Fair Debt Collection Practices Act (FDCPA). Plaintiff's claims arise from a debt collection notice sent to her that allegedly contained false and deceptive information. Now before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, arguing that Plaintiff has failed to articulate any injury in fact sufficient to confer Article III standing. (ECF No. 8.) The Court finds that the briefing adequately addresses the issues in contention and

1

dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court GRANTS Defendant Congress Collection LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1).

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Background

On or about June 16, 2020, Defendant Congress Collection sent Plaintiff a collection letter regarding a debt that had been placed with it for collection. (ECF No. 1, Complaint (Compl.) at ¶ 26, PageID.6) (ECF No. 1-1, Ex. A, Collection Letter, PageID.14.) That Collection Letter sets forth the statutorily-required debt validation notice:

> Unless you notify this office within 30 days after receiving this notice that you dispute the debt or any portion thereof, Congress Collection will assume this debt is valid. If you notify this office in writing within 30 days of receiving this notice, Congress Collection will obtain verification of the debt or obtain a copy of a judgment and mail a copy of such judgment or verification. If you submit a written request to Congress Collection within 30 days of receiving this notice, Congress Collection will provide you with the name & address of the original creditor, if different from the current creditor.

(Collection Letter, PageID.14.) The Letter further states: "This account may be placed on your personal credit file and thus negatively impact your credit score if left resolved." (*Id.*)

2

Plaintiff alleges that this second statement is false and deceptive and "overshadows" the statutorily-required validation notice "by scaring Plaintiff into making payment immediately to avoid negative credit reporting instead of exercising his [sic] statutory right to dispute the debt as provided by the FDCPA." (Compl. ¶¶ 31-32, PageID.8.) Plaintiff further asserts that "[t]his language is false and deceptive because Defendant has no way of knowing whether Plaintiff's credit score would decrease as a result of delaying payment." (*Id.* ¶¶ 33-34, PageID.8.) Plaintiff claims that, "[a]s a result of Defendant's deceptive, misleading and unfair debt collection practices, Plaintiff has been damaged." (*Id.* ¶ 36, PageID.8.) Plaintiff's Complaint otherwise contains no allegations regarding any alleged "injuries" Plaintiff suffered.

### B.    Procedural History

On August 20, 2020, Plaintiff filed this putative class action against Defendant. (Compl.) Plaintiff asserts two claims under the FDCPA: Count I – Violation of 15 U.S.C. §1692e "by creating a false and misleading representation of the legal status of the debt in violation of §1692e(10)" and "by falsely representing the character, amount or legal status of the debt in violation of §1692e(2)(A);" and Count II – Violation of 15 U.S.C. § 1692g "by threatening negative credit reporting, which overshadows the 'g-notice' language and coerces the consumer not to exert its rights under the FDCPA." (*Id.* PageID.9-11.)

3

Defendant filed a Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1). (ECF No. 8, Def.'s Mot.) Defendant argues that Plaintiff's Complaint should be dismissed because Plaintiff has not articulated any injury in fact traceable to the Collection Letter sufficient to confer Article III standing. Instead, she only speculates that the credit reporting statement in the Letter might "coerce" someone to waive their procedural rights and promptly pay a debt to avoid negative credit consequences. Defendant contends that this speculative consequence does not constitute a concrete injury sufficient to support Plaintiff's standing to bring this case.

Plaintiff filed a Response in opposition to Defendant's motion. (ECF No. 11, Pl.'s Resp.) Plaintiff argues that she has Article III standing based exclusively on Defendant's alleged statutory violations. She contends that Defendant's "deception" regarding negative credit reporting "puts Plaintiff at a materially greater risk" of causing her to forego and overlook her validation of rights, and that "risk of such forfeiture is enough to satisfy the injury-in-fact requirement of Article III because seeking validation of a debt is one of the central interests that Congress sought to protect under the statute."

Defendant filed a reply brief in support of its motion. (ECF No. 14, Def.'s Reply.) Defendant contends that Plaintiff "concedes she has no tangible injuries."

4

Defendant argues that Plaintiff's "blanket claim of harm from mere receipt of a letter disclosing the possibility of credit reporting" does not "establish a material risk of harm that her procedural right to dispute the debt or seek validation might be squandered." Defendant concludes that Plaintiff has failed to demonstrate that she has legal standing to bring a claim under the FDCPA, and her Complaint should be dismissed.

## II.  LEGAL STANDARD

Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Lyshe v. Levy*, 854 F.3d 855, 858 (6th Cir. 2017). Subject-matter jurisdiction is always a "threshold determination," *American Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007), and "may be raised at any stage in the proceedings." *Schultz v. General R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008). Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). As relevant here, a facial attack on the subject-matter jurisdiction alleged in the complaint questions the sufficiency of the pleading. *Id*. When reviewing a facial attack, a court must take the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to

dismiss. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). If those allegations establish federal claims, jurisdiction exists. *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## III.  ANALYSIS

### A.    The Fair Debt Collection Practices Act

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). "The FDCPA prohibits a wide array of specific conduct, but it also prohibits, in general terms, any harassing, unfair, or deceptive debt collection practice, which enables the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014). The FDCPA codified several specific consumer-protective rights, including those in Section 1692g, which sets out requirements for a debt collector's "initial communication with a consumer in connection with the collection of any debt," including that the communication notify the consumer of the right to dispute the debt and to seek verification of the validity of the debt through written notice and request to the creditor. 15 U.S.C. § 1692g(a). If the debtor makes such a written verification request, the debt collector must cease collection efforts until the verification is provided to the consumer. *Id.* §

1692g(b). The FDCPA gives consumers a private right of action to enforce its provisions against debt collectors. 15 U.S.C. § 1692k(a).

To determine whether conduct fits within the broad scope of the FDCPA, the conduct is viewed through the eyes of the "least sophisticated consumer." *Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008). This objective standard recognizes that the FDCPA protects the gullible and the shrewd alike while simultaneously "'prevent[ing] liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Id.* (quoting *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008)).

## B.    Standing

Defendant asserts that Plaintiff lacks standing to pursue her FDCPA claims. Article III, § 2 of the Constitution extends the judicial power of the United States "only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S. Ct. 1540, 1547 (2016) ("*Spokeo II*") (quoting U.S. Const. Art. III, § 2). Standing "ensure[s] that federal courts do not exceed their authority" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* Standing is a jurisdictional requirement. *See Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002). Thus, if a plaintiff does

not have standing, the court lacks subject matter jurisdiction. *See Lyshe*, 854 F.3d at 857.

To establish standing, a plaintiff must meet the minimum threshold of having "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo II*, 136 S. Ct. at 1547. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* At the pleading stage, as here, "the plaintiff must clearly … allege facts demonstrating each element [of standing]. *Id.*

Injury-in-fact is the "[f]irst and foremost" element of the standing inquiry; "[a]n injury in fact must be real, not abstract, actual, not theoretical, concrete, not amorphous." *Huff v. Telecheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019) (citing *Spokeo II*, 136 S. Ct. at 1548), *cert. denied*, 140 S. Ct. 1117 (Feb. 24, 2020). This first requirement requires proof of an actual injury, that is, "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo II*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.*

8

However, "'[c]oncrete' is not … necessarily synonymous with 'tangible[,]'" and "intangible injuries can nevertheless be concrete." *Spokeo II*, 136 S. Ct. at 1549. Some concrete, intangible injuries may flow from statutory violations. *Id*. However, "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing," *Id*. at 1547-48, and "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549 ("For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."); *see also Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 862 (6th Cir. 2020) ("Congress cannot confer standing on a plaintiff – and thus open the door to federal court – when the plaintiff has not sustained an injury in fact; Article III's standing requirements still apply."). With respect to statutory FDCPA violations, the Sixth Circuit has explained:

> *Spokeo* categorized statutory violations as falling into two broad categories: (1) where the violation of a procedural right granted by statute is sufficient in and of itself to constitute concrete injury in fact because Congress conferred the procedural right to protect a plaintiff's concrete interests and the procedural violation presents a material risk of real harm to that concrete interest; and (2) where there is a "bare" procedural violation that does not meet this standard, in which case a plaintiff must allege "*additional* harm beyond the one Congress has identified." *Spokeo II*, 136 S. Ct. at 1549.

9

*Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 756 (6th Cir. 2018); *see also Buchholz*, 946 F.3d at 863.

### C.   Whether Plaintiff has Article III Standing

### 1.   No actual injury or imminent risk of harm

Defendant argues that Plaintiff lacks standing because she has not alleged that she sustained any injury in fact or imminent risk of harm as a result of the credit reporting statement in the Collection Letter. (Def.'s Mot. at p. 7, PageID.35.) The Court agrees.

First, Plaintiff has not articulated any specific harm arising from her claims that the credit reporting overshadowed her rights or was otherwise deceptive: "no forbearance, no reliance, no anxiety, no harm to her credit." (Def.'s Mot. at p. 8, PageID.36.) Defendant points out that Plaintiff does not allege that "she paid the debt after reading the letter to avoid potential harm to her credit profile," "does not allege that she disputed and/or requested validation of the debt, or refrained from doing so, based on the statement," and "[i]n fact, does not allege that she would have acted any differently if the letter omitted the credit reporting statement, much less, did act differently," but rather simply alleges that she was "damaged." (*Id*. at pp. 8-9, PageID.36-37.) Plaintiff does not address or dispute this argument, and failure to respond to an argument amounts to a waiver of that issue. *See Alexander v. Carter*

10

*for Byrd*, 733 F. App'x 256, 261 ("[U]nder the law of this circuit," the district court properly deemed claim waived where the plaintiff failed to respond to the challenge to the claim in the defendant's motion.); *Haddad v. Sec'y U.S. Dept. of Homeland Sec.*, 610 F. App'x 567, 568-69 (6th Cir. 2015) (A plaintiff is deemed to have abandoned a claim when he or she fails to address it in response to a dispositive motion.). The Court finds that Plaintiff fails to allege in her Complaint that she sustained any actual injury in fact as a result of the credit reporting statement in the Collection Letter. ⸳

Defendant further argues that Plaintiff does not allege a risk of any imminent injury, because she does not allege that Defendant demanded "immediate" payment. As the Sixth Circuit explained in *Huff*, "[a] material risk of harm, it is true, may establish standing. But the 'threatened injury must be *certainly impending* to constitute injury in fact.'" *Huff*, 923 F.3d at 463 (internal and end citations omitted). Defendant asserts that Plaintiff simply speculates that the credit reporting statement might "coerce" someone to waive their procedural rights and promptly pay a debt to avoid negative credit consequences. This speculative injury is insufficient to establish a risk of imminent injury as applied to Plaintiff. *See Buchholz*, 946 F.3d at 865 ("[T]he Supreme Court has explained that the fear of a future harm is not an injury in fact unless the future harm is 'certainly impending.'") (citing *Clapper v.*

11

*Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)). Plaintiff does not address or dispute this argument, and the Court finds that Plaintiff has failed to allege a risk of "imminent injury" to her.

## 2. Procedural statutory violation as injury in fact

In her Response, Plaintiff instead argues that Defendant's alleged statutory violations of the FDCPA, alone, are sufficient to confer standing in this case, and that she need not allege any additional harm. (Pl.'s Resp. at p. 6, PageID.59.) As the Sixth Circuit has explained, however, "just because a plaintiff alleges a procedural violation does not mean the plaintiff has constitutional standing." *Buchholz*, 946 F.3d at 867 (citing *Spokeo II*, 136 S. Ct. at 1549). Rather, "the plaintiff must still satisfy Article III's standing prerequisites, including the injury-in-fact requirement." *Id.*

The Supreme Court decision in *Spokeo II* directs courts to consider two factors to determine whether an intangible injury is cognizable in such a situation – congressional judgment and the common law. *Spokeo II*, 136 S. Ct. at 1549. First, considering congressional judgment, because Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," its decision to create certain procedural rights and causes of action is "instructive and important." *Id.* However, "Congress' role in identifying and elevating intangible harms does not

12

mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* A bare procedural violation, "divorced from any concrete harm," cannot satisfy Article III's injury-in-fact requirement, even if the plaintiff has a statutory basis for litigating the claim in federal court. *Id.* If a plaintiff alleges a "bare" procedural violation of a statute, there must also be an allegation of "additional harm beyond the one Congress has identified" to establish standing. *Id.*

However, in certain circumstances, the violation of a procedural right granted by statute can be sufficient to constitute injury in fact without the allegation of any additional harm beyond those identified by Congress. *Spokeo II*, 136 S. Ct. at 1549. The violation of a procedural right granted by statute is sufficient in and of itself to constitute a concrete injury in fact if (i) "Congress conferred the procedural right to protect a plaintiff's concrete interests," and (ii) "the procedural violation presents a material risk of real harm to that concrete interest." *Macy*, 897 F.3d at 756 (finding that defendant's misstatement of the statutory validation rights (failure to state that the debtor's validation request must be in writing) satisfied the concreteness prong of the injury-in-fact requirement of Article III standing because it could result in a loss of most statutory protections in § 1692g). "Whether a procedural violation is cognizable depends on the particular circumstances of the case." *Buchholz*, 946 F.3d

at 868. Accordingly, at the pleading stage, the plaintiff must allege some harm or risk of harm to the particular concrete interest Congress sought to protect with the applicable statutory provision. *Id*. at 870.

> As a court in this District explained:
>
> In the context of alleged violations of the FDCPA, the Sixth Circuit has rejected the notion that a consumer suffers a concrete injury any time that she receives a communication containing a misrepresentation, no matter how trivial, during the debt collection process. *E.g.*, *Lyshe*, 854 F.3d at 858. Rather, under Sixth Circuit precedent, the types of misrepresentations that are sufficient *in and of themselves* to create a concrete injury are restricted to the heartland of misrepresentations that Congress intended to prevent when it enacted the FDCPA, namely: (i) misrepresentations as to whether the plaintiff owed the debt, such as misstatements regarding the identity of the debtor, the amount of debt owed, or the validity of the debt; (ii) misrepresentations that could cause the plaintiff to waive his procedural rights under the FDCPA; and (iii) threats of arrest or criminal prosecution if the plaintiff fails to pay the debt. *See Buchholz*, 946 F.3d at 870.

*Randolph v. Congress Collections LLC*, No. 20-cv-12146, 2021 WL 1738874, at *3 (E.D. Mich. May 3, 2021) (emphasis added). *See also Hagy v. Demers & Adams*, 882 F.3d 616, 621-23 (6th Cir. 2018) (dismissing plaintiffs' claim – that the collection letter failed to disclose that it was a "communication … from a debt collector" – on standing grounds because plaintiffs "have not shown … that this failure to disclose caused them any actual harm beyond [a] 'bare procedural violation.'").

14

In this case, Plaintiff contends that:

> deceptively threatening to issue negative credit reports to the credit
> bureaus during the 30-day validation period implies that if Plaintiff
> does not "act now" (as it were, set off in quotation marks), she will face
> grave consequences to her credit history. This puts Plaintiff at a
> materially greater risk of making decisions that are detrimental to her
> legal and financial affairs because she is induced to pay immediately
> (indeed, threatened if she doesn't) during the 30-day validation period,
> causing her to forego and overlook her validation rights.

(Pl.'s Resp. at p. 11, PageID.64.) Plaintiff argues that the "risk of such forfeiture is

enough to satisfy the injury-in-fact requirement of Article III because seeking

validation of a debt is one of the central interests that Congress sought to protect

under the statute." (*Id.*)

The Court disagrees with Plaintiff's argument and finds that Plaintiff lacks

standing to pursue her claims in this case for a number of reasons. First, while

Plaintiff brings claims for violations of both 15 U.S.C. §§ 1692e and 1692g, she does

not allege that the statutorily-required validation (or "g-notice") language in the

Collection Letter itself is misleading or deceptive or otherwise inadequate. Indeed,

the language in the letter appears to track the language required by 15 U.S.C. §

1692g(a). Plaintiff further does not dispute the validity or amount of the debt, or that

she owes a debt. Rather, Plaintiff offers a constrained reading of a single sentence in

the collection letter – that "[t]his account *may* be placed on your personal credit file

15

and thus negatively impact your credit score *if left unresolved*" (Letter, PageID.14 (emphases added)) – and argues that this sentence "overshadows" the statutorily-required validation notice and somehow could cause her, or others, to waive their procedural rights under the FDCPA. However, this single sentence in the Letter, which appears in the same font and size, and on the same page as the validation notice directly below it, does not in any way instruct, or imply, that Plaintiff must "act now," as Plaintiff alleges in her Response brief, or otherwise convey a false sense of urgency. It only states that the account "*may*" be placed in her credit file "*if left unresolved*." This statement would not cause (and apparently did not cause) Plaintiff to waive her procedural rights under the statute. The Court rejects Plaintiff's "idiosyncratic interpretation" of the Collection Letter.

Further, Plaintiff has failed to show that merely informing a consumer that her debt, if not paid, may be reported to a consumer reporting agency, constitutes a violation of the FDCPA. Indeed, the FDCPA ordinarily allows debt collectors to communicate with reporting agencies so long as otherwise permitted by law. 15 U.S.C. § 1692c(b) ("[A] debt collector may not communicate, in connection with the collection of any debt, with any person *other than* the consumer, his attorney, a *consumer reporting agency* if otherwise permitted by law ...") (emphases added). *See also Sabel v. Halsted Fin. Servs., LLC*, No. 20-CV-1216 (CS), 2020 WL

16

6274986, at *3-4 (S.D.N.Y. Oct. 26, 2020) (collecting cases rejecting arguments that such credit reporting language, standing alone, violates the FDCPA or overshadows the validation notice). In fact, as a Court in this District found, "[e]ven assuming that this [type of statement] is a misrepresentation, it is light years away from the types of misrepresentations that are sufficient *in and of themselves* to create an injury in fact." *Randolph*, *supra*, 2021 WL 1738874, at *3 (emphasis added) (finding that the plaintiff cannot prevail on the theory that an alleged statutory violation, by itself, is an injury in fact, based on a statement in a letter to plaintiff that her delay in paying the debt "may result in a negative effect on your credit score, causing you to pay … higher interest rates on loans and auto insurance rates in the future").

Finally, the cases Plaintiff relies on in her Response are distinguishable. In *Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731 (E.D. Mich. 2017), the court noted that it "already has held in its prior opinion that a jury reasonably could conclude that the letters at issue in this case were objectively misleading to the 'least sophisticated consumer'" because the letters deceptively used law firm letterhead and a generic signature "Trott & Trott, P.C.", which would lead a reasonable consumer to the false impression the letters were from an attorney when in fact they were generated and sent by administrative personnel not engaged in the practice of law. *Id.* at 748; *see Martin v. Trott Law, P.C.*, 198 F. Supp.3d 794, 804-05 (E.D.

17

Mich. 2016) (denying defendant's motion to dismiss such claim). 15 U.S.C. § 1692e(3) (prohibiting "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney"). The Court found that the failure to accurately disclose this information as required by the FDCPA was sufficient to confer standing. *Martin*, 265 F. Supp. 3d at 749. There are no similar "objectively misleading" statements or omissions in the letter in this case.

Plaintiff also relies on *Adams v. Seterus, Inc.*, No. 18-12731, 2019 WL 4735157 (E.D. Mich. Sept. 27, 2019), for the proposition that standing is established based purely on alleged violations of the FDCPA. However, in that case, the issue was not whether the plaintiff failed to satisfy the first element of standing by not alleging an injury in fact. Rather, the defendant argued that plaintiff failed to identify that any alleged injury in fact (in that case, alleged "anxiety, stress, anger, frustration, and mental anguish") is *traceable* to statements made by defendant in the debt collection letter. *Id.* at *3. The court rejected defendant's argument that plaintiff's injury was caused solely by her own default on her mortgage and loan, and found that she had sufficiently alleged a concrete harm attributable (fairly traceable) to the dunning letter sent by defendant. *Id.*

Finally, in *Geary v. Green Tree Servicing, LLC*, No. 2:14-CV-00522, 2017 WL 2608691 (S.D. Ohio June 16, 2017), the court found that defendant's failure to

include the FDCPA-required statutory debt validation notice in the debt collection letter satisfied the "concreteness" prong of injury in fact because it created the real risk of plaintiffs forfeiting their rights to dispute or require defendant to verify their debt. *Id.* at *4. Conversely, in this case, there is no dispute that Defendant provided the statutorily-required validation notice language, and Plaintiff has not alleged that Defendant failed to include such a statutorily-required notice or that the notice is otherwise inadequate.

Plaintiff has failed to show that she suffered a harm that Congress intended to prevent or that is analogous to a harm that the common law recognizes. The Collection Letter does not misrepresent the validity or status of the debt, demand payment by a certain date, or misstate Plaintiff's dispute or validation rights, and Plaintiff's "idiosyncratic" interpretation of that letter to the contrary is rejected. The Court finds that Plaintiff has failed to allege facts demonstrating that she has the requisite legal standing to bring a claim under the FDCPA, and accordingly dismisses her Complaint.

## IV.  CONCLUSION

For the reasons discussed above, Defendant Congress Collection LLC's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is **GRANTED** and Plaintiff's

Complaint is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter

jurisdiction**.**

IT IS SO ORDERED.

|  | s/Paul D. Borman |
|---|---|
| Dated: August 10, 2021 | Paul D. Borman<br>United States District Judge |